1
2
3
4
5
6
7

FILED & ENTERED

JAN 06 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

8

9

10

11

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

12  In re:                                          CHAPTER 7

13  Jeffrey Curtis Archer                           Case No.:  1:11-bk-17628-MT

14                                                  Adv No:   1:12-ap-01412-MT

15                          Debtor(s).

16  John Steve Archer                               **MEMORANDUM OF DECISION RE:**
                                                    **MOTION FOR SUMMARY JUDGMENT**
17                          Plaintiff(s),

18      v.                                          Date:       January22, 2014
19                                                  Time:       12:00 p.m.
    Jeffrey Curtis Archer                           Courtroom:  302
20

21

22                          Defendant(s).

23

24          This is a Motion for Summary Judgment where the parties have stipulated to binding
     arbitration post-petition. While the arbitration award is quite detailed, it has been difficult to
25   apply its findings to those required in an objection to discharge. After careful analysis of these
     findings, the Court finds that they support solely a finding of no discharge under section
26   523(a)(2)(A) for a total of  $7,248.31.  This memorandum of decision contains the court's
     findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made
27   applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. The
     court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and 11 U.S.C. §523.  This is a
28   core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## I. BACKGROUND

### 1.  The Properties

In early 2003, John Archer [1], Debtor's brother ("Plaintiff"), and Debtor Jeffrey Archer [2] ("Debtor" or "Defendant") mutually agred to and formed a partnership in order to acquire, own, invest and renovate real property for profit. See Debtor's Opposition To Motion for Summary Judgment ("Opposition") (December 19, 2013) at 2:22-24.

The properties of the partnership included:

- 5635 Mason Ave, Woodland Hills, CA 91367 ("Mason")
- 20300 Vanowen St. Winnetka, CA 91306 ("Vanowen")
- 7759 Winnetka Ave. Winnetka, CA 91306 ("Winnetka")
- 16630 McCormick St. Encino, CA ("McCormick")

See Arbitration Decision at 2 of 54:22-28 and 3 of 54:1-9.

Both Plaintiff and Defendant jointly inherited the Mason and Winnetka properties. See MSJ, Ex. 1 Arbitration Decision at 3 of 54:15-16. The McCormick and Vanowen property were jointly purchased. Id. at 3 of 54:18 and See Notice of Filing of Two Superior Court Complaints, and Two Judgments, ("Superior Court Complaints") (January 23, 2014) at Ex.1 at 2 and Ex. 2, Adversary dkt. no. 21. Plaintiff occupies one of the properties; two are rented out to tenants, and the parties sold the other property that was purchased for renovation. See Plaintiff Motion for Summary Judgment ("MSJ") (December 5, 2013) at 3:4-11. On or about July 28, 2004, McCormick sold for $635,000. See Opposition at 4:24. "Upon closing [Defendant] reimbursed to him all of his portions of the costs and expenses but failed to pay to [Plaintiff] the $60,000 of [Plaintiff]'s own personal funds to improve McCormick that were not reimbursed upon the closing of the McCormick sale." Id. at 4:23-28.

### 2.  The State Court Proceedings

Pre-petition, Plaintiff filed two complaints in the Superior Court of Los Angeles (Collectively the "State Court Actions") against Debtor regarding the four real properties and the rental income from those properties. See MSJ at 2:14-16 and see also Superior Court Complaints. The State Court Action case number LC08**9564** was filed on April 28, 2010. The Complaint alleged causes of action for Partition; Accounting; Breach of Oral Agreement; Breach of fiduciary duty; Quantun Meruit, Conversion, and Unjust Enrichment. The First Amended Complaint for case number LC08**9343** was filed on September 17, 2010 and alleged claims against Defendant for Breach of Oral Agreement; Breach of fiduciary duty; Fraud- Affirmative Misrepresentation; Fraud- Promise Without Intent to Perform; Constructive Fraud; Negligent Misrepresentation; and Accounting. See Superior Court Complaints Ex. 1 and 2.  (Collectively "State Court Complaints"). (Emphasis Added).

The Fraud cause of action generally alleged that Defendant verbally made the

---

[1] Referred to as Claimant and Cross Respondent  in the Arbitration Award.
[2] Referred to as Respondent and Cross Claimant in the Arbitration Award.

misrepresentations that he would reimburse Plaintiff all monies expended by him for the renovation materials and that no profit was obtained by the partnership after the renovation and sale of the premises. See Superior Court Complaints, Ex. 1 at 6-7. A Cause of Action of Conversion in the second state court complaint alleged "Defendant Archer's acts alleged above were willful, wanton, malicious, and oppressive, were taken with intent to defraud Plaintiff, and justify the award of exemplary and punitive damages." See Superior Court Complaints, Ex. 2 at 12:2-22.

**3. The Arbitration**

Post-petition, both parties agreed to attend binding arbitration to resolve the legal disputes in the State Court Actions. The Arbitrator based his decision on both State Court causes of actions. See Arbitration Decision at 1 of 54 ¶ 17. The causes of action included in the Arbitration were Partition, Breach of Oral Agreement, Breach of fiduciary duty, Accounting, Quantum Meruit, Conversion; Unjust Enrichment; Fraud- Affirmative Misrepresentation; Fraud-Promise Without Intent to Perform; Constructive Fraud; Negligent Misrepresentation; and Accounting [re Winnetka and Vanowen from 2/2010 to September 2011]. See MSJ, Arbitration Decision Ex. 1 at 3 of 54: 24-28. The Arbitration lasted four days.

      a.   The Findings

The Arbitrator stated that Plaintiff met his burden of proof by a preponderance of evidence that its claims are supported by the facts and law and that Plaintiff met his burden for the majority of claims. See MSJ, Ex. 1 at 49 of 54. [3] The Arbitrator made particular factual findings and conclusions of law, including:

> "There is no doubt that [Defendant] has made numerous representations to the Claimant and to this Arbitrator. It is also clear that [Defendant] had clear knowledge that what he was representing to this Arbitrator was false, he had full and complete scienter. Without any doubt whatsoever the [Defendant] intended to deceive the [Plaintiff] and this Arbitrator. It appears that the [Defendant's] deceit was justifiably relied upon by the [Plaintiff] and the [Plaintiff] did suffer damages.

See MSJ, Ex. 1 at 48 of 54.

      b.   The Award

The Arbitrator issued a binding award on October 28, 2011, that included the sale and/or transfer of Debtor's interest in the real property listed above. See MSJ, Ex. 1 Arbitration Award at 50-54. The Arbitrator filed a partial award in Plaintiff's favor and declared Plaintiff to be the prevailing party. Id. at 53.

On February 5, 2012, the Arbitrator, after reviewing additional briefs from the parties, filed the final award. [4] See MSJ, California Court of Appeal Affirming Judgment Ex. 5 at 4.

---

[3] The Arbitration Award did not specify which claims other than Fraud.
[4] The final award was not submitted as an exhibit for the Motion or Opposition but was requested subsequently by the Court.

Among other things, Plaintiff was awarded $7,248.31 in compensatory damages and $52,500 in punitive damages as well as title to the Mason and Winnetka properties. Id. Defendant was awarded title to the Vanowen property. See MSJ Judgment Filed With Notice of Motion And Motion To Confirm Arbitration Award Ex. 4 at 2:22-25. On March 12, 2012, Plaintiff filed a Motion to Confirm the Arbitration Award in Superior Court. See Id. Ex. 5 at 5. On April 10, 2012, Defendant filed his opposition to Plaintiff's motion. See Id. The trial court rejected all of defendant's arguments and granted Plaintiff's motion to confirm. Thereafter, the Superior Court confirmed the arbitration award and issued its judgments for each State Court Action. [5] See Id. Ex. at 4. See also Superior Court Complaints Ex. 3 and 4. The Defendant appealed both judgments, and the California Appellate Court affirmed the judgments on September 25, 2013. See MSJ Ex. 5 at 4.

## 4.  The Bankruptcy and Adversary Procedural History

On June 22, 2011, Defendant filed a chapter 13 Bankruptcy. See Bankruptcy Case no. 1:11-bk-17628-MT. On January 25, 2012, the Court granted relief from the automatic stay so that the Superior Court litigation could be completed. See MSJ Order Granting Relief From The Automatic Stay Ex. 3. On August 21, 2012, Debtor's case was converted to one under chapter 7. On January 18, 2013, Debtor received his discharge.

On November 26, 2012, Plaintiff filed this adversary against Debtor under Section 523(a)(2) and (6). Plaintiff then filed this Motion for Summary Judgment (the "Motion") which Defendant opposed.[6]  The hearing on the Motion was held on January 22, 2014. Both represented parties appeared and the Motion was taken under advisement to give the Plaintiff the opportunity to file the State Court Complaints the arbitrator adjudicated. See Notice of Filing of Two Superior Court Complaints, and Two Judgments, Adversary Proceeding Dkt. no. 21. The Court notes that the arbitration award filed with the Motion for Summary Judgment was not the final arbitration award. The Court did not receive the correct final arbitration award until September 26, 2014 after it issued an order requesting the correct version. The arbitration award filed with the Motion was on 54 pages. The final arbitration award submitted after the Court issued its order was 67 pages and included the punitive damages discussion that is vital to the Court's analysis.

## Statute of Limitations

Defendant argues that Plaintiff's claims are barred by the Statute of Limitations for all the alleged causes of actions. The California Appellate Court already addressed this issue and found that the defendant failed to raise this issue before the arbitrator and even if Defendant had raised the issue, the trial court would have been precluded from reviewing that decision because "an

---

[5] Judgment for Compensatory Damages of $7,248.31 in Case no. LC08**9564** was confirmed by Superior Court Judge Richard Adler. See MSJ Ex. 4. Judgment for Punitive Damages of $52,500 against Defendant as punitive damages for defrauding Plaintiff with willful and malicious intent to cause Plaintiff injury in Case no. LC08**9343** was affirmed by Superior Court Judge Burt Glennon. See Dkt no. 21 Ex. 4.

[6] Service of all pleadings is deemed proper. While Plaintiff raises an issue with Defendant's State Proof of Service ("POS") asserting that it is not in proper form and violates Local Bankruptcy Rule ("LBR") 5005-2(d) because a copy was not served to the Judge/Chambers, the Court will deem Defendant's State POS as proper under LBR 1001-1(d). LBR 1001-1(d) states "[t]he Local Bankruptcy Rules apply uniformly throughout the district, but are not intended to limit the discretion of the court. The court may waive the application of any Local Bankruptcy Rule in any case or proceeding, or make additional orders as it deems appropriate, in the interest of justice."

arbitrator's decision is not generally reviewable for errors of fact or law. The Court will not revisit this issue as it was not timely raised. <u>See</u> MSJ Ex. 5 California Court of Appeal Affirming Judgment at 6.

**Judicial Notice**

Plaintiff asks the Court to take Judicial Notice of Exhibits 1-5 in its Motion for Summary Judgment "MSJ". Exhibit 1 is a true and correct copy of the Arbitration award; Exhibit 2 is an Addendum to the arbitration award, signed by the arbitrator; Exhibit 3 is a copy of the Order Granting Motion for Relief from the Automatic Stay; Exhibit 4 is the Superior Court Judgment confirming the Arbitration Award; Exhibit 5 is the California Court of Appeal Decision confirming the Superior Court Judgment. The Court takes judicial notice pursuant to Federal Rule of Evidence 201[7] of Exhibits 1-5 attached to Plaintiff's Motion because they are court documents and the accuracy of the documents has not been questioned.

**Summary Judgment**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. <u>Id.</u> at 324. The court must view the evidence in the light most favorable to the nonmoving party. <u>Bell v. Cameron Meadows Land Co.</u>, 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. <u>Hector v. Wiens</u>, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Valadingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. <u>Sankovich v. Insurance Co. of N. Am.</u>, 638 F.2d 136, 140 (9th Cir.1981).

A "material fact" is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. <u>T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n.</u>, 809 F.2d 626, 630 (9th Cir. 1987).

## II. ISSUE PRECLUSION

### A) <u>A Confirmed Arbitration Award Is Equivalent To A Final Judgment</u>

Collateral estoppel principles apply in bankruptcy cases and can be used in nondischargeability actions to prevent re-litigation of issues already decided. <u>Grogan v. Garner</u>

---

[7] Federal Rule of Evidence 201 provides that "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755, 24 C.B.C.2d 1 (1991). California law prescribes that a confirmed arbitration award has the status of a judgment in a civil action. Cal.Civ.Proc.Code § 1287.4. Vandenberg v. Superior Ct., 21 Cal.4th 815, 824, 88 Cal.Rptr.2d 366, 982 P.2d 229, 234 (1999). The full faith and credit principles of 28 U.S.C. § 1738 require the bankruptcy court to give effect to a state court judgment. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373. [8]

If a California court would be permitted to give issue preclusive effect to the confirmed arbitration award that was entered as between the parties, then the bankruptcy court is also entitled to give issue preclusive effect. Stasz v. Quackenbush (In re Stasz), 2007 WL 7540964 1, 6 (9th Cir.BAP 2007) citing McDonald v. City of West Branch, Mich., 466 U.S. 284, 287 (1984); Harmon v. Kobrin (In re Harmon), 250 F .3d 1240, 1245 (9th Cir.2001); Khaligh, 338 B.R. at 824.

In this case, the arbitration award was confirmed as a State Court Judgment and affirmed by the California Appellate Court. Therefore, it is given the same status as a judgment and requires the same standard of review as a judgment in a civil action. In re Khaligh, 338 B.R. 817, 824.

**B) Were the elements of Issue Preclusion satisfied during arbitration to give it preclusive effect in the adversarial proceeding?**

Issue preclusion, or collateral estoppel, bars a party from relitigating any issue necessarily included in a prior, final judgment. Malkoskie v. Option One Mortg. Corp., 188 Cal.App.4th 968, 115 Cal.Rptr.3d 821, 825 n.4 (Cal.App. Dist. 2010) (citations omitted). The burden of establishing the doctrine rests on the party asserting it. Ferraro v. Camarlinghi, 161 Cal.App.4th 509, 529, 75 Cal.Rptr.3d 19, 36 (Cal.App. 2008).

Under California law, issue preclusion applies only if all of the following elements have been satisfied:

(1) The issue sought to be precluded must be identical to that decided in the former proceeding;
(2) The issue must have been actually litigated in the former proceeding;
(3) The issue must have been necessarily decided in the former proceeding;
(4) The decision in the former proceeding must be final and on the merits;
(5) The party against whom issue preclusion is sought must be the same as, or in privity with, the party to the former proceeding.
(6) Whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy.

Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 824-25 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007) (citing Lucido v. Super. Ct., 51 Cal.3d 335, 341-43, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225-27 (1990)).

---

[8] The basic features of California issue preclusion law were restated by the California Supreme Court in Lucido v. Superior Ct., 51 Cal.3d 335, 341–43, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225–27 (1990), and then qualified with respect to arbitration awards in Vandenberg v. Superior Ct., 21 Cal.4th 815, 824, 88 Cal.Rptr.2d 366, 982 P.2d 229, 234 (1999). In re Khaligh, 338 B.R. 817, 824 (B.A.P. 9th Cir. 2006) aff'd, 506 F.3d 956 (9th Cir. 2007).

"To meet this burden, the moving party must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts. Reasonable doubts about what was decided in the prior action should be resolved against the party seeking to assert preclusion." Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382 (9th Cir. BAP 2011) (internal citations omitted). It is the moving party's burden to show with "clarity and certainty" what was actually determined in the prior action. Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1321 (9th Cir. 1992). at 1321. It is not enough simply for "the party [to] introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated. United States v. Lasky, 600 F.2d 765, 769 (9th Cir. 1979).

### (1) Claim under § 523(a)(2)

The elements of fraud under § 523(a)(2) match the elements of the common law tort of fraud and the elements of actual fraud in California.  In re Jung Sup Lee, 335 B.R. 130, 136 (B.A.P. 9th Cir. 2005).  The facts required to establish the elements of fraud that were brought in the Arbitration are the same as those alleged in Plaintiffs' Complaint to Determine Dischargeability.  Under California tort law, fraud requires a showing of: 1) misrepresentation (false representation, concealment or nondisclosure), 2) knowledge of falsity, 3) intent to defraud, i.e., to induce reliance, 4) justifiable reliance on the part of the plaintiff, and 5) resulting damage.  Charpentier v. Los Angeles Rams Football Club Co., Inc., 75 Cal. App. 4th 301, 312 (Cal. Ct. App. 1999).

Section 523(a)(2)(A) excepts from discharge any debt "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. §523(a)(2)(A).  A creditor's claim of nondischargeability based on Section 523(a)(2)(A) must satisfy five elements: (1) the debtor made a false statement or engaged in deceptive conduct; (2) the debtor knew the representation to be false; (3) the debtor made the representation with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained damage resulting from its reliance on the debtor's representation.  In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000).  The Ninth Circuit requires that the provisions of the § 523(a) exceptions to discharge should be construed narrowly.  See, e.g., Cal. Franchise Tax Bd. v. Jackson (In re Jackson), 184 F.3d 1046, 1051 (9th Cir.1999); Bowen v. Francks (In re Bowen), 102 B.R. 752, 756 (B.A.P. 9th Cir. 2001).

### (i)    False statement or deceptive conduct

The Arbitration Award found that Defendant, made numerous misrepresentations to the [Plaintiff] and the Arbitrator. See MSJ Ex. 1. Pg 48 of 54.  The Court will focus solely on the misrepresentations Defendant made to the Plaintiff before the State Court Complaints were filed, specifically, the representations made by Defendant after the sale of the McCormick property as these are the relevant representations. Defendant told Plaintiff that he would reimburse Plaintiff for his expenditures on the McCormick property. Defendant however, reimbursed himself first and then he told Plaintiff that after accounting for all expenditures, taxes and receipts, the partnership failed to turn a profit, so Defendant did not reimburse Plaintiff.

The Arbitrator found that Defendant engaged in deceptive conduct when Defendant failed to disclose to Plaintiff that he paid himself a fee for accomplishing the acquisition loan on McCormick; received a referral fee from the listing agent; and deposited forged checks. See MSJ Exh. 1 at 19 of 54:109 and Id. at 20 of 54:116. The Arbitrator stated, "[t]he strife by and between the parties apparently arose in 2009. At that time [Plaintiff] was clearing out his garage and when reviewing some documents he noticed many documents with his signature on them that he never signed. [9] He also saw a check from Orna Ered to [Defendant] which he was unaware of." See MSJ Ex 1 at 28 of 54:9-12. Defendant also made a profit off of the Vanowen property refinance done to reimburse Plaintiff for his McCormick personal expenditures. See MSJ Ex. 1 at 45 of 54:14.

Defendant argues that there was no proof of fraudulent conduct involving the McCormick property and that Defendant refinanced the Vanowen property ("Vanowen Refinance") to reimburse Plaintiff for his direct expenditures on the McCormick property. Defendant claims that Plaintiff received his entire portion from the proceeds of the sale and based on those facts there can be no fraud or intent to commit fraud. See Opposition at 5:¶ 13-14.

Defendant, however, did not provide any evidence that Plaintiff received the funds from the Vanowen Refinance. The Arbitration Decision mentions that Defendant took out the loan in Plaintiff's name because of Defendants bad credit. Nowhere in the decision does it say that Plaintiff received these funds. In fact, the arbitration decision addressing the Vanowen Refinance, says "[s]ince the funds are rightfully owed to Plaintiff I must take that into consideration...Ideally [Plaintiff] would receive a sixty thousand credit/offset against the net proceeds the sale of Vanowen. Since Vanowen is likely to sell at a loss...[Plaintiff] is to receive $30,00 in the sale in which he may use as he deems fit towards Mason or Winnetka." See MSJ Ex. 1 at 45 of 54:7-23. The attempt to cure the fraud after the fact did not prevent the Arbitrator from making a finding of fraud. In addition, the State Complaints were filed in 2010, after Defendant allegedly used the Vanowen refinance loan to reimburse Plaintiff in 2006. Thus, Plaintiff did not receive the Vanowen Refinance proceeds as reimbursement for the McCormick expenditures.

Defendant also argues that the referral fee collected by Defendant does not constitute actionable fraud or anything actionable at all because Plaintiff was not entitled to any portion of the $3,000 referral fee paid to Defendant by Ms. Orna Ered who sold the McCormick property. See Opposition at 6. The non-disclosure of the referral fee was not the only fact on which the Arbitrator based his finding of fraud. [10] Although Defendant may not have been eligible to receive the fee, the parties still had a 50/50 agreement and Defendant ultimately profited from the sale at the detriment to Plaintiff who did not receive any profits or even reimbursement of his expenditures.

Thus, the Arbitrator's findings are sufficient that the Defendant made false statements and engaged in deceptive conduct, satisfying the first element of Section 523(a)(2)(A).

---

[9] The Arbitration Award does not state all the documents with the forged signatures but there was evidence of some checks. The Court does not know whether the checks were deposited in Defendant's account or in the brother's joint account. Based on the facts presented to the Arbitrator, however, he nevertheless found fraud.
[10] See the (i) False Statement and Deceptive Conduct discussion above.

*(ii) Knowledge of falsity (or 'scienter')*

Plaintiff alleged that Defendant concealed the profit in an attempt to convert monies owed to him. The Arbitration Award detailed that Defendant knew the statements and deceptive conduct were false when he made them, or alternatively, he made them with reckless disregard for the truth of the statements.  See In re Gertsch, 237 B.R. 160, 167 (9th Cir. B.A.P. 1999), citing In re Houtman, 568 F.2d 651, 656 (9th Cir. 1978).

The Arbitrator found that Defendant was aware of his deceptive conduct and the fraudulent statements discussed above. Defendant knew that he was violating the terms of partnership and there were unaccounted for profits, or alternatively, that he had a reckless disregard for the truth when he concealed the profitability of the partnership and did not make an accounting for Plaintiff. The Arbitrator stated, "[Defendant] never explained why [Defendant's] down payment and expenses had a priority over the expenses of [Plaintiff]." See MSJ Ex. 1 at 48 of 54:3-5. In addition, Defendant knew that Plaintiff was not aware of the referral fee he had collected and that he was forging checks and depositing them without Plaintiff's knowledge.

*(iii) Intent to deceive, i.e., to induce reliance*

Plaintiff must show that at the time of Defendant's statements that Plaintiff would share in the partnership profit and be reimbursed for his personal contributions, Defendant intended to induce Plaintiff's reliance on the alleged misstatements.  Because it is nearly impossible to prove an intent to deceive by direct evidence, "[a] court may infer fraudulent intent from various kinds of circumstantial evidence." Edelson v. Commissioner, 829 F.2d 828, 832 (9th Cir.1987); Gertsch v. Johnson & Johnson, Fin Corp. (In re Gertsch), 237 B.R. 160, 167–68 (B.A.P. 9th Cir.1999). The court may look at "the totality of the circumstances and the conduct of the person accused" in order to make an inference of fraudulent intent. In re Ormsby, 591 F.3d 119, 1206 (9th Cir.2010). When the misrepresentation is a promise to perform in the future, the subsequent failure to perform is not enough to prove the promise was fraudulent; rather it must be shown that the debtor did not intend to perform at the time the promise was made. In re Lee, 186 B.R. 695, 699 (9th Cir. BAP 1995).

Here, the misrepresentations were Defendant's promise to reimburse Plaintiff for his expenditures and to split the profits of the partnership. The Statements were made both prior to the commencement of the McCormick renovation and again after it was sold. The Arbitrator found that "[w]ithout any any doubt whatsoever the [Defendant] intended to deceive the [Plaintiff] and this arbitrator." See MSJ E. 1 at 48 of 54: 19-20. Thus, under the totality of the circumstances and based on Defendant's conduct, Defendant made the representations, discussed in section (i) above, with the intent to deceive Plaintiff.

The arbitration findings shows that Defendant did not intend to reimburse Plaintiff for his expenditures and Defendant did intend to retain the net profits from the McCormick property. Plaintiff alleged that the partnership was profitable and Defendant concealed the profitability and refused to make an accounting of the profits in an attempt to convert monies due to Plaintiff. By not providing an accounting, Defendant intended to deceive Plaintiff into believing that the partnership did not earn a profit and that there were insufficient funds to reimburse him. Defendant intended to further induce reliance that he would reimburse Plaintiff by taking out a

loan in Plaintiff's name (Vanowen Refinance) to repay Plaintiff for his expenditures. [11]

The Arbitrator found the accounting provided by Defendant at the arbitration hearing not credible. The Arbitrator said, "[o]nly divine providence could identify all the possible false entries in the McCormick accounting provided by [Defendant]." See MSJ Ex. 1 at 21 of 54:10-12. Thus, Defendant's false accounting also indicated an intent to deceive and induce reliance.

Accordingly, the third element of Section 523(a)(2)(A) is met.

*(iv) Justifiable reliance*

For determining reliance, courts apply a subjective "justifiable" reliance standard, which turns on a person's knowledge under the particular circumstances. Citibank, N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir.1996). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. (quoting Field v. Mans, 516 U.S. 59, 70 (1995) (quoting the Restatement (Second) of Torts § 545A cmt.b (1976)). "[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." Id. (quoting Mans, 516 U.S. at 70). However, a person cannot justifiably rely on a representation if he or she knows it is false or its falsity is obvious. Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1459 (9th Cir.1992) (a "person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth").

In this case, it was justifiable for Plaintiff to rely on his brother's statements that the sale of the McCormick property resulted in a loss and Plaintiff would be reimbursed for his expenditures on the McCormick renovation. Plaintiff relied on the partnership agreement with Defendant that they would share the profits and Defendant's statement that the sale resulted in a loss. Defendant was in charge of the partnership finances so he would know whether the sale resulted in a loss. Plaintiff, however, could not verify this information without Defendant providing an accounting. Plaintiff relied on this statement until years later when Plaintiff discovered some forged documents and the referral fee paid to Defendant. Plaintiff also relied on Defendant's statements that he would eventually be reimbursed for the expenditures for the McCormick property.

The Arbitration Decision noted that the parties had a long history of prior dealings. Plaintiff had no way of knowing that Defendant would not reimburse him for his expenses or that Defendant would conceal the sale profits. The sale of the McCormick property was the first property of the partnership to be renovated and sold. Defendant testified that he never intended to reimburse Plaintiff for his labor and based on the record, Defendant did not intend to reimburse Plaintiff for his expenditures either. See MSJ Ex. 1 at 47 of 54:21-23. The Arbitrator stated that "[Defendant] would claim ignorance of the events and expenditures where all were hiding in plain sight. Improvements to a property do not occur without work or expenditure of funds." See MSJ Ex. 1 at 50 of 54:9-11.

Therefore, Plaintiff justifiably relied on Defendant's misrepresentations and the fourth

---

[11] The Arbitrators award found that Plaintiff never received reimbursement from the Vanowen Refinance. See the (i) False Statement and Deceptive Conduct discussion above.

element of nondischargeability under Section 523(a)(2)(A) is met.

*(v) Resulting damage to Plaintiffs proximately caused by its reliance on the debtor's statement or conduct*

Causation or proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a substantial factor in determining the course of conduct that results in loss and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." Beneficial Cal., Inc. v. Brown (In re Brown), 217 B.R. 857, 862 (Bankr.S.D.Cal.1998) (citing Restatement (Second) of Torts, §§ 546, 548A). "A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." Restatement (Second) of Torts, § 548A. In other words, could Plaintiffs' damage reasonably be expected from his reliance on Defendants' alleged misrepresentation that the partnership was not profitable.

Plaintiff argues that Defendant knew that financial damages were certain to occur based upon the conduct set forth in the Award. The resulting damage to Plaintiff was the loss of his expenditures. Plaintiff testified at the arbitration hearing that he deemed there was $37,000 of unaccounted for proceeds and the Arbitrator awarded him half. See MSJ Ex. 1. Plaintiff's loss of funds and profits could reasonably be expected as a result of relying on Defendant's misrepresentations.

In summary, the parties had a partnership agreement and were co-owners of real property. After the sale of the McCormick property, Defendant told Plaintiff that the sale resulted in a net loss and he would eventually reimburse Plaintiff his expenditures. Defendant had no intention of doing so because he wanted to keep the profits for himself. Plaintiff relied on Defendants statement that he would reimburse him to his detriment because ultimately he was never fully reimbursed for his expenditures.  Thus, the five elements of nondischargeability under Section 523(a)(2)(A) are met.

Plaintiff correctly argues that the elements of fraud are the same as those set forth in § 523(a)(2).  To support their argument, Plaintiff submitted a copy of the Arbitration Award, Judgment, and Appellate Court Decision affirming the judgment, which includes factual allegations made against Defendant with respect to each element. See MSJ Ex. 1, 2, 4, and 5.  In addition, the facts required to establish the elements of fraud that were brought in the Arbitration are the same as those alleged in Plaintiffs' Complaint to Determine Dischargeability. See Superior Court Complaints Ex. 1. Finally, the Arbitration Award states the elements of fraud that the Arbitrator considered. See MSJ Ex. 1 at 48 of 54:13-15. Thus, the issue of Fraud alleged in the Complaint re Dischargeability is identical to that which was decided in the Arbitration Award.

### (2) *Claim under § 523(a)(6)*

The Arbitrator awarded punitive damages under California Civil Code § 3294 against Defendant following the arbitration proceedings. Plaintiff argues that based upon Defendant's actions of set in the Arbitration Award, Defendant intended to harm him and knew that financial damages were substantially certain to occur, thereby causing willful and malicious injury.

California Civil Code § 3294 allows imposition of exemplary (punitive) damages in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.  Cal Civ Code § 3294 ©(1).

Section 523(a)(6) excepts from discharge any debt of the debtor "for willful or malicious injury to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  Under § 523(a)(6), Debtors' actions would need to equate with "willful and malicious" injury within the meaning of the Code. The first step of this inquiry is whether there is "willful" injury, which must entail a deliberate or intentional injury.  Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). In the Ninth Circuit, the intent required to be considered "willful" is either the subjective intent of the actor to cause harm or the subjective knowledge of the actor that harm is substantially certain to occur.  Carrillo v. Su (In re Su), 290 F.3d 1140, 1144-45 (9th Cir. 2002). The second step of the inquiry is whether Debtors' conduct was "malicious."  The relevant test for such "malicious" conduct is: 1) a wrongful act; 2) done intentionally; 3) which necessarily causes injury; and 4) without just cause and excuse.  Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1105-1106 (9th Cir. 2005).

The statutory scheme set out in § 523(a) indicates that nondischargeability claims alleging fraud should be brought under § 523(a)(2)(A).  See McCrary v. Barrack (In re Barrack), 201 B.R. 985, 990-91 (Bankr.S.D.Cal.1996) (finding that the more specific statute, § 523(a)(2)(A), controls fraud nondischargeability rather than the more general statute, § 523(a)(6)), *reversed on other grounds*, 217 B.R. 598 (B.A.P. 9th Cir. 1998). Indeed, section 523(a)(2)(A) expressly applies to debts "for money" obtained by "actual fraud." 11 U.S.C. § 523(a)(2)(A). The Supreme Court, has suggested that nondischargeability claims based on fraud fall within the ambit of § 523(a)(6) only if: (1) the debtor fraudulently obtained something other than money, property, or services; or (2) the fraud claim involved punitive damages. Grogan v. Garner, 498 U.S. 279, 282 n. 2 (1991). The Supreme Court has since clarified that all damages (both actual and punitive) resulting from a debtor's fraud are nondischargeable under § 523(a)(2)(A). See Cohen v. De La Cruz, 523 U.S. 213 (1998).

The import of the arbitration decision is that Defendant made misrepresentations to Plaintiff and committed fraud in the way he handled the property renovation and sales. The findings were sufficient for a § 523(a)(2)(A) claim, but do not rise to the level of willful and maliciousness sufficient for a § 523(a)(6) claim. Clearly, there was a contentious arbitration proceeding where Defendant was found to not be truthful. The sanction imposed in that proceeding appears to be solely post-petition and separate from the actions alleged in the complaint objecting to discharge.

Although, in many cases, an award of punitive damages will be sufficient to establish the malicious element, in this case, the punitive damages were awarded as a result of Defendant's conduct at the arbitration hearing and not clearly based on Defendant's conduct alleged in the State Court Complaints. For the Court to grant issue preclusion under §523(a)(6), the willful and malicious injury needed to have occurred pre-petition, as part of the harm alleged to be non-dischargeable.  The Arbitration Award conflates Defendant's conduct at trial with his previous

dealings with Plaintiff. The Arbitrator's Final Award explains his reasoning for awarding punitive damages based on Defendant's egregious conduct during the arbitration proceeding. [12] The punitive damages were not based on the fraud claim or explicitly on the property renovations and sales claims alleged in the complaints. Thus, the elements of nondischargeability under section 523(a)(6) are not met and cannot be given issue preclusion.

### (3) **Same Party Requirement**

The Debtor/Defendant Jeffrey Curtis Archer named in the adversary proceeding, is the same party who was the Respondent and Cross Claimant in the arbitration proceeding.

### (4) **Policy Considerations**

The final inquiry is whether it is fair and consistent with public policy to give preclusive effect to this judgment. The California Supreme Court has identified three policies underlying the doctrine of collateral estoppel: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." Baldwin v. Kilpatrick (In re Baldwin), 249 F.3d 912, 919-920 (9th Cir. 2001).

In this case, issue preclusion is fair and consistent with public policy because, as discussed above, the same issues have already been adjudicated and decided. As discussed below, issue preclusion of the arbitration award will preserve the integrity of the legal system, promote judicial economy, and protect Plaintiff from relitigating the same facts as presented during the arbitration proceedings.

When applying issue preclusion based on a confirmed arbitration award, the court must examine "whether the underlying arbitration followed basic elements of adjudicatory procedure and was, thus, 'adjudicatory in nature.'" Stasz v. Quackenbush (In re Stasz), 2007 Bankr. LEXIS 4917 (B.A.P. 9th Cir. Feb. 28, 2007) citing Khaligh, 338 B.R at 828 quoting Kelly v. Vons Cos., 67 Cal.App. 4th 1329, 1336 (1998). Whether an underlying arbitration is "adjudicatory in nature" and thus eligible for preclusion depends, in California courts, on whether the proceeding entailed the "essential elements of adjudication" as outlined by Restatement (Second) of Judgments § 83. Id., citing Khaligh, 338 B.R. at 828–30.

In the instant proceeding, both parties agreed to binding arbitration, therefore adequate notice was given. The record indicates that the arbitrator "duly heard the proofs and allegations of the Claimant and Respondent, all in accordance with the Rules of the American Arbitration Association…" See MSJ Ex. 1 at 2. The arbitration hearing lasted from August 22, 2011 through August 25, 2011. Both parties participated through the presentation of evidence, arguments and briefs. See MSJ Ex. 5 California Court of Appeal Affirming Judgment at 3. The arbitration award is a fifty-nine page written decision including corrected addendum. The award reflects that the arbitrator reviewed the pertinent legal authorities at least as to certain issues, the applicable facts and evidence, and concluded Plaintiff was the prevailing party.

---

[12] Defendant forged documents at the arbitration hearing against Plaintiff. Arbitrator states that Defendant knew what he was doing and Defendant intended to harm his brother by forging the HELOC agreement and Mason lease and committing perjury during the arbitration hearing. See MSJ Ex. 1 at 31, 42, and 44 of 54.

A final decision was rendered by the Arbitration Award, and the Judgment filed by the Superior Court which was affirmed by the California Appellate Court. The proceeding was conducted in an inherently adjudicatory fashion. Therefore, the arbitration award meets the adjudicatory standards in a manner that satisfies the sixth element of the California law that requires the application of issue preclusion be fair as between the parties and comport with public policy.

The Defendant correctly argued that Plaintiff's motion for summary judgment was conclusory. After parsing through the record, however, the Court must give preclusive effect to the arbitration award as all the factors of issue preclusion are met under section 523(a)(2)(A). This Court's careful analysis on what was actually decided in the arbitration and how they connect to the requirements of a discharge action further ensure that the public policy of both issue preclusion and Federal Bankruptcy law are met.

### III. DAMAGES

The Judgment pertaining to the Properties has been administered. At the hearing on January 22, 2014, the parties stated that the properties had been bought and sold to consummate that part of the Arbitration Judgment order. All that is left is to determine is the remaining amount of monetary damages. Thus, Plaintiff is seeking solely the amount of the punitive and compensatory damages to be considered non-dischargeable.

Although, the Court recognizes the preclusive effect of the Arbitration decision and non-dischargeability under section 523(a)(2)(A), there is still an issue as to the amount of the award that is nondischargeable for the fraud claim. The amount of damages from the Arbitrators award for each cause of action must be clear and must include an identifiable allocation to specific factual issues giving rise to nondischargeability.

The arbitration addendum awarded Plaintiff $395,244.32 in compensatory damages, attorney's fees, costs and punitive damages. See MSJ, Ex. 2 at 3 of 5. After offsetting the amount awarded to Defendant, Plaintiff was left with $372,244.32 in credits to apply in his discretion. Id. After applying the credits to the properties,[13] Plaintiff was left with $7,248.31 in net compensatory damages and $52,500 in punitive damages for fraud and title to the Mason and Winnetka properties. Id. at 4 of 5:26-28. Defendant was awarded title to the Vanowen property. The Superior Court confirmed the Arbitration Award and ordered, "Plaintiff is awarded $52,500 against Defendant as punitive damages for defrauding Plaintiff with the willful and malicious intent to cause Plaintiff injury". See Superior Court Complaints, Ex. 4- Judgment Filed with Notice of Motion and Motion to Confirm Arbitration Award, Adversary Proceeding dkt. no. 21.

As stated earlier however, although the Arbitration Award included a discussion explaining why, given the facts of the case, punitive damages were warranted, these do not relate back to the original property transactions. The punitive damages were not awarded for the fraud claim. The Arbitration decision, under the heading "Other Claims" states that "[Plaintiff] is seeking sanctions against [Defendant] for the fraud, perjury which [Defendant] committed during

---

[13] (Remaining balance of credits after purchase of Mason and Winnetka properties and allocations toward anticipated short fall in Vanowen property: $59.748.31). 5. The remaining balance of the credits shall be awarded as follows: a. Compensatory Damages in the amount of $7,248.31 and b. Punitive Damages for Fraud in the amount of $52,500. See MSJ, Ex. 2 at 4 of 5:23-28.

the litigation and during the Arbitration. <u>See</u> MSJ, Ex. 1 at 7 of 54:4-11. The Arbitrator stated, "[p]unitive damages should be awarded against [Defendant] as punishment for fabricating evidence, lying under oath for the past two years, perjuring himself before the Arbitrator and knowingly presenting a forged lease and a forged HELOC agreement which was also falsely notarized to the Arbitrator and testifying on numerous occasions that these documents were genuine long after anyone who is capable of rational scrutiny would have done so." <u>See</u> MSJ, Ex. 1 at 7 of 54:7-11.

Although, the punitive damages state at one point they were awarded "for fraud" the ruling clearly awards them solely for Defendant's actions during the Arbitration proceedings. The Arbitration Award conflates Defendant's conduct at the hearing with the conduct complained of from years before in the complaints. Thus, only the compensatory damages are nondischargeable and the Motion for Summary Judgment is partially denied.

## IV. CONCLUSION

For the reasons stated above, the Motion For Summary Judgment is GRANTED in part and DENIED in part.  The Motion for Summary judgment is GRANTED as to the nondischargeability for fraud under § 523(a)(2)(A). The Motion For Summary Judgment is DENIED as to the nondischargeability of willful and malicious injury under § 523(a)(6). The Motion is also DENIED as to the amount of damages awarded in the Arbitration Award. $7,248.31 in net compensatory damages is nondischargeable for fraud under § 523(a)(2)(A).

Plaintiff should submit a judgment and order in accordance with this ruling.

###

Date: January 6, 2015

Maureen A. Tighe
United States Bankruptcy Judge

-15-